**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 22-CR-20215-GAYLES/TORRES

UNITED STATES OF AMERICA,

      Plaintiff,

v.

MARTIN ANTHONY TRENCH, and
BENJAMIN MARTE SANDOVAL,

      Defendants.

_____/

**REPORT AND RECOMMENDATION**
**ON DEFENDANTS' MOTION TO DISMISS INDICTMENT**

This matter is before the Court on Defendants' motions to dismiss indictment.

[D.E. 17, 19].   The Government filed a joint response in opposition.   [D.E. 20].

Defendants did not file replies and the time to do so has since passed.   Defendants

also did not request a hearing on the motion, and so no hearing was held.

Accordingly, the motions are now ripe for disposition.   After careful consideration of

the motions, the record, the relevant authorities, and for the reasons discussed below,

Defendants' motions should be **DENIED**.[1]

---

[1]     On August 17, 2022, the Honorable Darrin P. Gayles referred Mr. Trench's motion to the Undersigned Magistrate for a Report and Recommendation.  [D.E. 18]. Subsequently, Mr. Sandoval filed an unopposed motion to join Mr. Trench's motion, wherein he advanced two additional arguments for dismissing the indictment.  Mr. Sandoval's motion was not specifically referred to the Undersigned Magistrate, however, this report and recommendation addresses both motions for the sake of providing the District Court with a comprehensive report and recommendation.

## I. *BACKGROUND*

According to the criminal complaint, a Canadian naval vessel with an embarked United States Coast Guard law enforcement team detected a go-fast vessel ("GFV") traveling approximately 190 nautical miles northeast of San Andres, Colombia, on May 1, 2022.   The GFV bore no visible indicia of nationality. Accordingly, the naval vessel changed its course to investigate.   Once in the vicinity of the GFV, the naval vessel launched two small boats with embarked boarding teams to seize the GFV.

As the small boats caught up with the GFV, the boarding teams observed the individuals on the GFV jettison packages into the water.   One of the small boats diverted to recover the jettisoned packages and, in doing so, pulled six bales of suspected contraband from the water.   The other small boat continued its pursuit of the GFV, which subsequently complied and became "dead in the water."

Upon boarding the GFV, members of the Coast Guard identified the two individuals on board as Mr. Trench and Mr. Sandoval.   Neither Mr. Trench nor Mr. Sandoval identified themselves as the master of the GFV; however, Mr. Trench made a verbal claim of Jamaican nationality for the GFV as well as for himself and Mr. Sandoval.[2]   In due course, the Coast Guard contacted the Jamaican government, who could neither confirm nor deny the registration of the GFV.   Accordingly, the Coast

---

[2]      Members of the Coast Guard later found a Dominical Republic passport on Mr. Sandoval's person, which bore his name and photograph.

Guard treated the GFV as a vessel without nationality and therefore a vessel subject to the jurisdiction of the United States.

A search of the GFV revealed approximately 165 kilograms of suspected cocaine, which was confirmed by two field tests. The boarding teams transferred Mr. Trench and Mr. Sandoval, along with the suspected cocaine, back to the naval vessel, which then resumed its patrol obligations in the Caribbean Sea.

Days later, the Department of Justice decided to prosecute this case in the Southern District of Florida and the Coast Guard arranged for the transport of Mr. Trench and Mr. Sandoval from the sea to the shores of Miami, Florida. On May 12, 2022, as they arrived in the Southern District of Florida, the Government filed a criminal complaint against Mr. Trench and Mr. Sandoval. They made their initial appearance pursuant to that complaint the following day; the complaint was subsequently superseded by an indictment.

The Government represents that the Coast Guard did not mistreat Mr. Trench or Mr. Sandoval, or subject them to improper interrogation, during their twelve-day journey from the Caribbean Sea to the United States. By contrast, they were provided with daily meals and beverages, clothing, blankets, showers, bathroom breaks, and medical care. The Court accepts these representations as true because Mr. Trench and Mr. Sandoval do not claim otherwise and did not file replies to challenge these representations.[3]

---

[3]    Instead of claiming that they have been mistreated in some particular way, Defendants reference a 2017 news article concerning a different case in which the conditions imposed upon the Coast Guard's detainees painted a less than positive

## II.    APPLICABLE PRINCIPLES AND LAW

A motion to dismiss an indictment is governed by Federal Rule of Criminal Procedure 12(b), which allows a defendant to challenge an indictment on various grounds, including failure to state an offense, lack of jurisdiction, or constitutional reasons.  *See United States v. Kaley*, 677 F.3d 1316, 1325 (11th Cir. 2012).  Moreover, a motion that the court lacks jurisdiction may be made at any time while the case is pending.  *See* Fed. R. Crim. P. 12(b)(2).

An indictment "may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial."  *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987).  Further, "[t]he sufficiency of a criminal indictment is determined from its face."  *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). The indictment's allegations are assumed to be true and are viewed in the light most favorable to the government.  *See Torkington*, 812 F.2d at 1354.

## III.    ANALYSIS

Defendants' motions advance a total of four arguments in support of dismissal: (1) the MDLEA is inapplicable to offenses occurring within the Exclusive Economic Zone ("EEZ") of Colombia; (2) the delay between Defendants' arrest and their presentment before a magistrate judge was unreasonable, unnecessary, unlawful, and outrageous; (3) the MDLEA's definition of a "stateless" vessel is facially

---

image of American hospitality.  We have no reason to believe that Defendants were subjected to similar conditions in this case and hence do not rely on the referenced hearsay article.

unconstitutional; and (4) Congress lacks the constitutional authority to regulate extraterritorial drug trafficking offenses bearing no nexus to the United States and therefore this prosecution violates Defendants' due process rights.  The first two arguments are advanced by both Defendants; the latter two arguments are advanced only by Mr. Sandoval.  We address each argument in turn.

### A.  *The MDLEA applies in EEZs.*

It is undisputed that the GFV was seized within Colombia's EEZ.  The legal significance of this fact, however, is disputed: Defendants contend that the MDLEA cannot apply within Colombia's EEZ because such application would exceed the authority granted to Congress by the Constitution to "define and punish . . . Felonies committed on the high Seas," which is the enumerated power that Congress relied on to enact the MDLEA.  U.S. CONST., art. I, § 8, cl. 10; *United States v. Bellaizac-Hurtado,* 700 F.3d 1245, 1248 (11th Cir. 2012) ("[T]he Felonies clause is textually limited to conduct on the high seas[.]").

Unfortunately for Defendants, the Eleventh Circuit has defined the high seas to constitute "all waters which are neither territorial seas nor internal waters of the United States or of any foreign country." *United States v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003); *United States v. Campbell*, 743 F.3d 802, 812 (11th Cir. 2014) ("[W]e have repeatedly held that Congress has the power, under the Felonies Clause, to proscribe drug trafficking on the high seas.").  A vessel outside the recognized 12-mile limit of a nation's territorial seas is a "vessel located within international waters" subject to the U.S.'s jurisdiction under the MDLEA.  *McPhee*, 336 F.3d at

1247 (holding that a vessel intercepted 17 miles from the Bahamas was "unambiguously in international waters at the time of its interception."). Furthermore, several courts, including some in this district, have held that a nation's EEZ remains part of the high seas and does not fall within the territorial waters of that nation. *See United States v. Alfonso*, No. 21-20306-CR, ECF No. 47 at 5-6 & n.2 (S.D. Fla. Nov. 22, 2021) (Altonaga, C.J.) (holding that the defendants were in the high seas when interdicted in the Dominican Republic's exclusive economic zone and collecting cases holding that territorial waters only extend to twelve nautical miles off the coast); *Dilbert v. United States*, No. 8:13-CV-2189-T-30MAP, 2013 WL 5408444, at *3 (M.D. Fla. Sept. 25, 2013) (holding that the petitioner "misinterpret[ed]" the United Nations Convention on the Law of the Sea and applying the "12-nautical-mile definition of territorial waters" as required by McPhee); *see also United States v. Beyle*, 782 F.3d 159, 167 (4th Cir. 2015) (holding that the exclusive economic zone is "merely part of the high seas where that nation has special economic rights and jurisdiction").

Here, it is undisputed that Defendants were intercepted approximately 190 nautical miles northeast of San Andres, Colombia. Applying the foregoing precedent, Defendants were undoubtedly captured on the high seas. Accordingly, Defendants' first argument is foreclosed by binding precedent, and so their motion to dismiss should be DENIED on that basis.

**B.**     ***The post-arrest delay was not unreasonable, unnecessary, unlawful, or outrageous.***

Defendants' next argument fares no better.    Federal Rule of Criminal Procedure 5(a)(1)(B) provides that "[a] person making an arrest outside the United States must take the defendant without unnecessary delay before a magistrate judge, unless a statute provides otherwise."    Accordingly, Defendants submit that the 12-day delay between their capture in the Caribbean and initial appearance in Miami constitutes an unreasonable delay necessitating the dismissal of the indictment. Considering that the Eleventh Circuit has approved of a 49-day delay in a similar case, we are hesitant to agree with Defendants.    *See United States v. Cabezas-Montano*, 949 F.3d 567, 590-94 (11th Cir. 2020).

Unnecessary delay arguments made pursuant to Rule 5 are analyzed in accordance with the *Purvis* factors.    *See United States v. Purvis*, 768 F.2d 1237, 1238-39 (11th Cir. 1985); *Cabezas-Montano*, 949 F.3d at 591-92 (applying the *Purvis* factors).    Accordingly, to determine whether the delay in presentment before a magistrate was unnecessary, the Court must consider: "(1) the distance between the location of the defendant's arrest in international waters and the U.S. port he was brought to; (2) the time between the defendant's arrival at the U.S. port and his presentment to the magistrate judge; (3) any evidence of mistreatment or improper interrogation during the delay; and (4) any reason for the delay, like exigent circumstances or emergencies." *Cabezas-Montano*, 949 F.3d at 591.

As to the first *Purvis* factor, the timeline and location associated with Defendants' arrest are not in dispute.   The interdiction occurred approximately 190

nautical miles northeast of San Andres, Colombia (i.e., in the southwest quadrant of the Caribbean Sea). This is roughly 700 miles from Miami as the crow flies, and so the distance that the naval vessel carrying Defendants needed to travel obviously exceeded that distance because the naval vessel necessarily had to circumnavigate around Cuba to reach Miami. Given that it took the Government only 11 days to traverse this substantial distance by sea in a large (i.e., slow) naval vessel subject to other patrol obligations, we cannot weigh this factor against the Government in light of *Cabezas-Montano*.

The second *Purvis* factor also weighs in the Government's favor. Defendants arrived in Miami after the court's cutoff time for initial appearances, but they were promptly brought before the duty magistrate judge the following day. Under the circumstances, this one-day delay is entirely reasonable.

With regard to the third *Purvis* factor, Defendants do not claim to have been mistreated or subjected to any improper interrogation during their trip from the Caribbean to this Court. Nor do they dispute the Government's representation that no mistreatment or improper interrogation took place. Instead, as referenced above, they point the Court to a 2017 news article concerning a different case that paints a critical portrait of how the Coast Guard to its detainees. They then assert, without any additional factual representations, that this incident reflects "a pattern of callous disregard for the rights of the accused," necessitating the dismissal of the indictment. Absent any specific, non-hearsay allegations of misconduct in this case, this factor cannot weigh against the Government.

The result under the fourth *Purvis* factor is no different that the preceding three: we cannot weigh it against the Government.   Because MDLEA cases can be tried in any district, the Department of Justice employs a system for distributing these cases throughout the country.   Thus, in addition to the Coast Guard's pre-existing patrol obligations, which necessarily and reasonably delayed Defendants' travel between the point of arrest and the point of final disembarkation, there was a brief delay caused by the Department of Justice's case distribution system. Nevertheless, the Court finds that these causes of the 12-day delay were reasonable under the circumstances.   Accordingly, Rule 5 has not been violated.[4]

Defendants alternatively submit that the indictment should be dismissed under the outrageous conduct doctrine.   They correctly observe that, in 1973, the Supreme Court said that we "may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction," but this Court cannot agree that this is such a case.   *See United States v.*

---

[4]      Defendants also submit that Rule 5(b) was violated because the Fourth Amendment requires the Government to secure a criminal complaint within 48 hours of arrest pursuant to *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), which requires a magistrate judge to make an independent probable cause determination within 48 hours.    Given the post-pandemic realities of remote work and the Undersigned's substantial experience processing electronic criminal complaints, it does indeed seem counterintuitive that the Government cannot (1) decide where to prosecute an MDLEA case and (2) acquire a criminal complaint within 48 hours of arrest. Nevertheless, Defendants' argument is foreclosed because Defendants are neither citizens nor residents of the United States; thus, having been arrested in international waters, controlling precedent provides that they do not have Fourth Amendment rights and are therefore ineligible to claim the benefits of *McLaughlin*'s 48-hour rule.   *See, e.g., Cabezas-Montano*, 949 F.3d at 593-94.

*Russell*, 411 U.S. 423, 431-32 (1973).  Nothing in the record indicates that the law enforcement agents involved in this case behaved outrageously or in any way that could be deemed something other than professional and courteous.  Accordingly, Defendants' motion to dismiss the indictment on these bases should be DENIED.

### C.  *Controlling precedent provides that the MDLEA's definition of a "stateless" vessel is not facially unconstitutional.*

To reiterate, the Constitution grants Congress the power "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations."  U.S. CONST., art. I, § 8, cl. 10.  "As interpreted by the Supreme Court, this clause contains three distinct grants of power: (1) the power to define and punish piracies (the Piracies Clause); (2) the power to define and punish felonies committed on the high seas (the Felonies Clause); and (3) the power to define and punish offenses against the law of nations, (the Offences Clause)."  *See United States v. Macias*, 654 F. App'x 458, 460 (11th Cir. 2016) (quotation marks and citation omitted).

Mr. Sandoval argues that § 70502(d)(1)(C) is unconstitutional because its definition of stateless vessel clashes with customary international law ("CIL").  According to Mr. Sandoval, the scope of the power granted by the Felonies Clause to Congress is confined to the limits proscribed by CIL and under CIL, a verbal claim of nationality by the master of the vessel constitutes a prima facie showing of nationality.  However, because § 70502(d)(1)(C) allows U.S. officers to treat as stateless vessels that, under international law, would be considered vessels with

10

nationality, this jurisdictional provision of the MDLEA transcends CIL and the scope of power granted by the Felonies Clause.

As a threshold matter, the strength of Mr. Sandoval's argument is diminished by a reading of *Macias*, where the Eleventh Circuit, in an unpublished opinion, addressed this exact question and rejected a near-identical claim of unconstitutionality against § 70502(d)(1)(C). *See Macias*, 654 F. App'x at 461.

Much as Mr. Sandoval does here, Macias argued that by enacting § 70502(d)(1)(C), Congress exceeded its authority under the Felonies Clause because his prosecution under MDLEA did not comport with CIL. Indeed, a review of that case and its record reveals that Macias made the same substantive argument that Mr. Sandoval puts forth here; namely, that the Felonies Clause is subject to the limits of CIL. *Compare* Reply Brief of Appellant at 4-7, *United States v. Macias*, 2016 WL 1375933 (arguing that "Congress's Power to Define and Punish Felonies on the High Seas is Limited by International Law") *with* [D.E. 19 at 2-5] (arguing that the Felonies Clause is constrained by customary international law). Yet, citing to several binding Eleventh Circuit holdings that have upheld the MDLEA, the *Macias* panel squarely rejected appellant's claim in that case:

> Macias contends that under *Bellaizac-Hurtado*'s reasoning, the term "define" in the Piracies and Felonies Clause limits Congress's authority under all three clauses to violations of customary international law. . . .

> Macias misreads *Bellaizac–Hurtado*. The Court in *Bellaizac–Hurtado* reasoned that it was the terms that follow "define" (i.e., "Piracies," "Felonies committed on the high Seas," and "against the Laws of Nations") that narrow Congress's authority. See id. at 1249. And, unlike the Offences Clause, the Felonies Clause is not narrowed by the language "against the Laws of Nations." *See* U.S. CONST., art. I, § 8, cl.

> 10. *Bellaizac–Hurtado*'s discussion of the meaning of the word "define" as it pertains to the Offences Clause does not support Macias's argument as to the Felonies Clause. Furthermore, the interpretation of the Felonies Clause Macias urges upon us conflicts with this Court's long-standing precedent that "the assertion of jurisdiction over stateless vessels on the high seas in no way transgresses recognized principles of international law." *See Marino–Garcia*, 679 F.2d at 1382.

*Macias*, 654 F. App'x at 461.

While the Eleventh Circuit in *Macias* did not explicitly address whether MDLEA's definition of stateless vessel in § 70502(d)(1)(C) comports with CIL, that opinion nevertheless squarely refused to conflate the international law limitations found in the Offences Clause with the relatively broader scope of power embodied in the Felonies Clause,[5] which is in essence the same action that Mr. Sandoval urges this Court to take here. We find that the reasoning in *Macias* provides a persuasive basis to deny Mr. Sandoval's motion.

Putting *Macias* aside, however, Mr. Sandoval's motion should also be denied because his theory for dismissal relies on First Circuit authority, which has subsequently been withdrawn pending a rehearing *en banc*, that departs from binding precedent in this Circuit holding that the MDLEA is a valid exercise of Congress' power under the Felonies Clause.

---

[5]    *See Bellaizac-Hurtado*, 700 F.3d at 1257 (expressly differentiating the Offences Clause from the Felonies Clause by noting that "Congress possesses additional constitutional authority to restrict conduct on the high seas, including the Piracies Clause, U.S. Const., Art. I, § 8, cl. 10; the Felonies Clause, *id.*; and the admiralty power, *United States v. Flores*, 289 U.S. 137, 148–49, 53 S.Ct. 580, 582, 77 L.Ed. 1086 (1933). And we have always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause.").

12

In support of his argument, Mr. Sandoval relies primarily on a recent case from the First Circuit holding that § 70502(d)(1)(C) exceeded the bounds of the Felonies Clause. *See United States v. Davila-Reyes*, 23 F.4th 153 (1st Cir. 2022), *reh'g en banc granted,* opinion withdrawn, 38 F.4th 288 (1st Cir. 2022). After a review of various historical sources, the *Davila-Reyes* panel concluded that the Felonies Clause only allows for the prosecution of crimes "committed by U.S. nationals or on vessels subject to U.S. jurisdiction under international law." *Id.* at 180. And, according to the First Circuit, under international law, a vessel may be deemed stateless only under three scenarios: (1) when the vessel refuses to claim a nationality; (2) when the vessel claims more than one nationality; and (3) when the claimed nation of registry affirmatively disavows a claim of nationality. *Id.* at 187. On the other hand, § 70502(d)(1)(C) "displaces the prima facie showing of nationality that arises from an oral assertion of nationality or registry—made in accordance with international law[,]" despite the fact that no source of international law recognizes a "country's failure to confirm nationality (instead of an outright denial), as a basis for overcoming [that] prima facie showing[.]" *Id.* at 184, 189. As such, the First Circuit held that § 70502(d)(1)(C) conflicts with international law and exceeds the authority granted in the Felonies Clause. *See id.* at 193.

But Defendants' reliance on *Davila-Reyes* is misplaced, for this Court is bound by the Eleventh Circuit, not the First Circuit; and the Eleventh Circuit has repeatedly held that the MDLEA is a valid exercise of Congress's power under the Felonies

Clause.[6]  *See Campbell*, 743 F.3d at 812 ("[W]e have repeatedly held that Congress has the power, under the Felonies Clause, to proscribe drug trafficking on the high seas."); *Bellaizac-Hurtado*, 700 F.3d at 1257 (11th Cir. 2012) ("[W]e have always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause."); *Macias*, 654 F. App'x at 460 (11th Cir. 2016) ("This Court has already twice rejected the argument that Congress exceeded its authority under the Felonies Clause in enacting the MDLEA.").

As the Government rightly points out, Mr. Sandoval's theory of unconstitutionality conflicts with Eleventh Circuit precedent in both *Campbell* and *Hernandez*.  In *Campbell*, United States officers interdicted a vessel transporting marijuana in international waters.  Although the vessel lacked all indicia of nationality, the master made a claim of Haitian nationality, which the Haitian government could neither confirm nor deny.  As such, the vessel was subjected to United States jurisdiction and the crew was arrested and charged under the MDLEA. *See Campbell*, 743 F.3d at 804.  The Eleventh Circuit squarely rejected Campbell's claim that Congress exceeded its authority under the Felonies Clause to prosecute his crime under the MDLEA, holding that § 70502(d)(1)(C) represents a valid exercise

---

[6]      Mr. Sandoval's argument likely would not fare any better if we were to apply the *Davila-Reyes* holding to this case.  As noted in *Davila-Reyes*, a prima facie showing of nationality arising from a master's oral claim can be undermined, including, "[f]or example, [when] the vessel's claimed nationality differs from the nationality of most crew members, or if a small vessel is interdicted far from the claimed country[.]" *Davila-Reyes*, 23 F.4th at 192.  Accordingly, Mr. Trench's claim of Jamaican nationality may be undermined because the GFV appears to have been a small vessel that was interdicted many miles from the shores of Jamaica.

of extraterritorial jurisdiction and allows for the prosecution of drug trafficking on the high seas. *Id.* at 810 ("[W]e have always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause.") (quotation marks and citation omitted).

In *Hernandez,* the Court addressed a statutory challenge to whether the subject vessel was "without nationality" for purposes of United States jurisdiction. There, the vessel was subjected to U.S. jurisdiction after the Guatemalan authorities failed to either confirm or deny the claimed nationality. However, the defendants argued that because the vessel was indeed registered in Guatemala—as registry documents later found revealed—the United States did not have jurisdiction under the MDLEA to prosecute them. *See United States v. Hernandez*, 864 F.3d 1292, 1298 (11th Cir. 2017). The Eleventh Circuit rejected this claim, noting that certification of the Guatemalan response was all that was required to establish the vessel as stateless under the MDLEA's conclusive-proof provision. *Id.* at 1299. As the Court put it, "MDLEA statelessness does not turn on actual statelessness, but rather on the response of the foreign government." *Id.*

Equally fatal for Mr. Sandoval's argument was the Court's holding with respect to international law challenges to the MDLEA. After concluding that the *Hernandez* defendants were in effect asserting violations of international law, the Court noted that "[a] person charged with violating [the MDLEA] . . . does not have standing to raise a claim of failure to comply with international law as a basis for a defense," because a "claim of failure to comply with international law in the enforcement of [the

15

MDLEA] may be made only by a foreign nation." *Id.* (citing 46 U.S.C. § 70505). Accordingly, the Court held that the courts were not the proper forum to seek challenges to the MDLEA on the basis of international law because "[w]ith that text, Congress has instructed: any battle over the United States' compliance with international law in obtaining MDLEA jurisdiction should be resolved nation-to-nation in the international arena, not between criminal defendants and the United States in the U.S. criminal justice system." *Id.* at 1302; *see also United States v. Anchundia*, No. 1:21-00223-KD-B, 2022 WL 855561, at *2–3 (S.D. Ala. Mar. 22, 2022) (holding that "the Eleventh Circuit has determined that whether a vessel is stateless under international law is not an issue to be determined by the courts" and declining to follow *Davila-Reyes*); *cf. Jones v. United States*, 137 U.S. 202, 224 (1890) (holding that certain factual jurisdictional determinations may be made by the Executive branch).

In light of this binding precedent establishing the constitutionality of the MDLEA, we cannot find that Congress exceeded its grant of authority under the Felonies Clause by enacting § 70502(d)(1)(C). This is a conclusion that has been widely adopted by the cases in our circuit analyzing this constitutional question post-*Davila-Reyes*. *See, e.g., United States v. Mendez*, No. 21-CR-20579, 2022 WL 1202889, at *4 (S.D. Fla. Apr. 21, 2022) (holding that "the Eleventh Circuit [has] effectively foreclosed Defendants' argument that Congress did not have the power under the Felonies Clause to enact the MDLEA's jurisdictional provisions."); *United States v. Urbina*, No. 8:21-CR-108-TPB-AAS, 2022 WL 1171366, at *1 (M.D. Fla. Apr. 20, 2022)

(refusing to apply *Davila-Reyes* because "[t]he Eleventh Circuit has consistently rejected constitutional challenges to the MDLEA. . . . [and] has held that the MDLEA is a valid exercise of Congress's power under the Felonies Clause[.]"); *United States v. Barros*, No. 21-CR-20438, 2022 WL 1135707, at *5 (S.D. Fla. Apr. 18, 2022) (upholding § 70502(d)(1)(C) and rejecting "Defendants' invitation to overlook binding precedent establishing the constitutionality of the MDLEA[.]"); *United States v. Berroa*, No. 21-20359-CR, 2022 WL 1166535, at *3 (S.D. Fla. Apr. 20, 2022) ("The Eleventh Circuit has repeatedly held that the MDLEA is a valid exercise of Congress's power under the Felonies Clause."); *United States v. Waters*, No. 21-20582-CR, 2022 WL 1224728, at *2 (S.D. Fla. Apr. 26, 2022) (same); *Anchundia*, 2022 WL 855561 at *2 (same).

Further, even assuming that the Felonies Clause is bound by CIL, the MDLEA's extraterritoriality is further supported by the protective principle. The protective principle is "the right of a state to punish a limited class of offenses committed outside its territory by persons who are not its nationals – offenses directed against the security of the state or other offenses threatening the integrity of governmental functions that are generally recognized as crimes by developed legal systems." Restatement (Third) of Foreign Relations § 402, cmt. f (1987); *see also United States v. Gonzalez*, 776 F.2d 931, 938 (11th Cir. 1985) (the protective principle "permits a nation to assert jurisdiction over a person whose conduct outside the nation's territory threatens the nation's security"). This provides an additional basis to hold that § 70502(d)(1)(C) complies with international law because "Congress,

17

under the protective principle of international law, may assert extraterritorial jurisdiction over vessels in the high seas that are engaged in conduct that has a potentially adverse effect and is generally recognized as a crime by nations that have reasonably developed legal systems." *United States v. Tinoco*, 304 F.3d 1088, 1108 (11th Cir. 2002) (quotation marks and citation omitted).

In sum, because this Court is "bound to follow prior binding precedent unless and until it is overruled" by the Eleventh Circuit or the Supreme Court, *United States v. Cruickshank*, 837 F.3d 1182, 1187 (11th Cir. 2016), we hold that § 70502(d)(1)(C) is a valid exercise of Congress' power under the Constitution and reject Defendants' challenges.  Accordingly, the motion to dismiss should be DENIED.

### D.      *The MDLEA's lack of a nexus requirement does not violate Defendants' due process rights.*

Mr. Sandoval acknowledges that his final argument is foreclosed by Eleventh Circuit precedent, but he nevertheless submits it for our consideration for "preservation purposes." [D.E. 19 at 1-2].  He argues that the lack of a nexus between his alleged drug trafficking and the United States results in a due process violation. The Eleventh Circuit reaffirmed its rejection of this argument in *Campbell*:

> Campbell argues that his convictions violated his right to due process because his offense of drug trafficking lacked a nexus to the United States, but he concedes that our precedents foreclose this argument too. We held in *Rendon* that the Due Process Clause of the Fifth Amendment does not prohibit the trial and conviction of an alien captured on the high seas while drug trafficking, because the Act provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas. 354 F.3d at 1326. And "this [C]ircuit and other circuits have not embellished the [Act] with the requirement of a nexus between a defendant's criminal conduct and the United States." *Estupinan,* 453 F.3d at 1338 (internal quotation marks and alterations

18

omitted). Campbell's conviction did not violate his right to due process under the Fifth Amendment.

*Campbell*, 743 F.3d at 812. And so here too we must reject this argument. In sum, the motions to dismiss must be DENIED.

### IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' motions to dismiss the Government's indictment [D.E. 17, 19] should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the Court finds good cause to expedite the objection period given the current trial date: the parties have October 19, 2022, at 9:00 a.m., to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 17th day of October, 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge